Good morning. We have five cases on the calendar today. The claims case, the Veterans' Appeal, and three government employee cases. The last three are being submitted on the briefs and not argued. So our first case is Adams et al. v. United States 065040. Mr. Bernstein. Good morning, Your Honors. My name is Jules Bernstein. I am accompanied by my co-counsel Linda Lipset and Edgar James at counsel table. We are here actually on appeals and consolidated cases 5040 and 5041, and it is the position of the appellants in these cases. Let me just interrupt you first. Let me just interrupt you before you begin on substance. You say appellants. Do you have one appellant or a long list of appellants?  And you know what the issue is? But were they all, they weren't all named. They were named, Your Honor, and the government raised the issue in its brief of our requirement to put all 6,000 names in. We said that rule 3 had been amended and that we were permitted to say, to state that we were representing all appellants and we listed them in the attachment to my notice of appearance. Why don't you get it certified as a class? This is not a, this was a Fair Labor Standards Act case, Your Honor, in which certification is not required under Rule 23 or otherwise. Doesn't it make it easier? Doesn't it make it easier if it's certified as a class? Well, Your Honor, that's a moot question because there is no provision generally for certification of Fair Labor Standards Act cases. Each plaintiff must file a, in court, a consent form to be represented by counsel, and we did indeed file such in the claims court a consent form on behalf of each plaintiff. Now, our position here is that the claims court's decision contained several clear procedural and substantive conflicts with square holdings of decisions of the United States Supreme Court, this Court, the unambiguous language of Section 254B of the Portal to Portal Act, as well as the rules and regulations of those agencies entrusted by Congress to administer the Fair Labor Standards Act and the Portal to Portal Act. Now, the first error here is that the government's summary judgment motions were utterly unaccompanied by any showing under Rule 56 and the appropriate cases such as Selatek's Berg v. Newman, and indeed, in the first appeal in this case to this Court, the case was sent back because there were no facts. Mr. Persky, why isn't this case governed by a Bobo decision? Your Honor, for a variety of reasons, and let me, if Your Honor so desires, let me get precisely to those, and that is that these cases are decided on their facts, and in this case, the facts are very different from those in Bobo, and one of the problems with the Court's decision, where the government, and here, the government put in no facts, so you have to begin with the idea that in order to win under Bobo, there are certain facts that have to be proven, namely, that the work was required, that it was not required, that it was not in the interest of the employer, and that it was in the interest of the employees. The government put in no facts, so you don't really get past Selatek's or Berg or Rule 56, because the government didn't put in a case. It thought that it could use as a silver bullet, if you will, Bobo. But there are a number of distinguishing facts here that did not appear in Bobo. So, for example, Section 31 U.S.C. Sec. 1344 A.2 declares that the government can only expend funds for cars. Mr. Bernstein, let me ask you, isn't the issue here driving, correct, between home and office and office to home? Yes. And nobody disputes that it was an agreed fact, it's undisputed, isn't it, that these individuals, your clients, were using the government vehicles for that purpose. That is true. So, and as I read the decision of the Court of Federal Claims, the Court decided it agreeing to that fact. There's no dispute that these employees drove to and from work in a government vehicle. But what other facts do you need to decide the case? Well, the other facts you need are to prove under even Bobo that the work was required, that it was not in the interest of the employees as a matter of fact, and that it was for the Now, here, under 1344, the statute says that such driving is essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties, and constitutes an official purpose. Well, doesn't that provision simply authorize the expenditure of funds for these purposes? Isn't the Portal-to-Portal Act what governs here, and that states that certain activities are not compensable, and that includes traveling to and from the place of work? Not so, Your Honor. The Portal-to-Portal… Which is not so? Well, all of the above. Oh. First, the Portal-to-Portal Act says that work must be post-liminary or pre-liminary to the work of the employees to be exempt. The burden to prove the exemption under the Portal Act is on the employer. Exemptions are to be read narrowly. Inclusions are to be read broadly. The government did not prove that… The government proved nothing that it was post-liminary or pre-liminary. This was integral. We proved that it, under the statute, that it was integral and indispensable to the performance of the duties of these employees. Now, if these cars had been driven every day to the homes of these employees so they could respond to emergencies from home, which was the purposes of their driving these cars home, there's no question that the employees who drove those cars to the homes of the employees would be entitled to pay, to be paid. There is no reason why these employees would not similarly be entitled to be paid. And indeed, Your Honors, for 20 years, the Office of Personnel Management, under FPM Letter 551-10 and 5 CFR 401, held and took the position that this kind of driving was compensable. There was a custom and practice to pay for this for non-exempt federal criminal investigators. The difference with these employees is that the government wrongfully treated them as exempt. That's the reason they weren't paid for their driving. But we have a stipulation in our settlement of the non-driving aspects of the case that they were non-exempt during the relevant time period. I still have a hard time following where there's a fact issue. Leaving aside for a moment the legal arguments, I have a hard time understanding where there's a fact issue. I mean, I would think the argument here is that the judge either got it right or got it wrong based on facts that don't seem to be in dispute. No, the facts aren't even in the record, Your Honor. That is to say, the burden is on the government to prove that this was post-liminary and preliminary. The government didn't submit what it was required to do. No, but it's clear that if you're driving to your office and then driving home, it's pre and post. No, it isn't, Your Honor. And the judge said they'd be compensated. Excuse me. Sure. Didn't the judge say that they would be compensated if they got an emergency call on the way? The judge did say that. And frankly, the judge didn't say that. And there's no question that we settled that part of the case. But OPM said that mere driving was compensable regardless of whether it was in connection with an emergency. For 20 years, this was the position of OPM. What if that is contrary to BOBO? That is not contrary to BOBO. And indeed, the employees involved in BOBO did not drive their cars to and from work in order to respond to emergencies. They were hauling dogs. And 551-10 only applied to employees who brought their cars home so they could respond to emergencies from home. Indeed, beyond that, if you are commuting, Your Honor, you may take your child or your spouse to work or do anything else. These employees were restricted as to their movements. They couldn't stop anywhere on a personal matter. So they were utterly in the employ of the United States while they were in those cars. They were not free like the ordinary commuter to stop and engage in personal business, cash a check, go to the cleaner, do all of the other things that ordinary commuters do. So there is no question but that they were in the employ of the government. Indeed, we cite a case where some DEA agent was in an accident and the court said, Look, obviously this was in the course of the employee's employment going back and forth to work. This person was driving this car at the government's behest and this was work. Now, there is another point. The claims court said that there was no exertion involved. That was one of the decisions, one of the basis for the decision. No exertion in driving. We all know there was exertion in driving. And the Supreme Court said that exertion is not required for there to be work. But you must pay for idle time or time spent waiting. So I think that's another basis for a direct conflict with the Supreme Court's decision in the FLSA area. Mr. Bernstein? Yes, sir. With respect to the 55110 letter, does that apply to both cases or just one? There seems to be an implication that it only applies to one of the two cases. Frankly, the government didn't put in any facts and we said it was there, that it was present, and that it was a fact which demonstrated that such work would be compensable. But is that applicable to both cases or just one? No. Well, when you say applicable, we do not contend that the employees in the non-criminal investigator case were expressly covered by that provision. So only the- Only the criminal investigators. And indeed, as I say, for 20 years, FLSA non-exempt criminal investigators who were GS-5s and 7s were paid. Now, the second string to our bow is that there was a- Mr. Bernstein, let me point out to you, you wanted to say five minutes rebuttal. You are well into that time. You can use it now or save it as you wish. I will reserve, Your Honor. All right. Thank you. Mr. Brilliant? May it please the Court? Mr. Brilliant, who has the burden of proof in this particular case? The plaintiffs do. This is not an exemption issue. This is a question simply of whether a certain time was spent by the plaintiffs doing what constitutes work under the FLSA. And the law is clear that the employees have the burden of proving that they worked, that they worked overtime. The question here is whether the home-to-work driving that they undisputedly did constituted work or not. So if it was a case of exemption, then the burden would be on the government to prove the exemption. That's right. The substantive issue, for example, of whether the category the employees are employed in, whether they're covered by the administrative exemption, for example, and therefore not covered by the FLSA at all, that would be the employer's burden to prove that they meet the requirements of that exemption. But the burden of proving how much work was done is the employer's work, and here it's not really a burden of proof. In this case, I think it's not a burden of proof issue anyway in that the factual issues were all assumed by the trial court below, essentially in favor of the plaintiffs. Mr. Bernstein mentioned that among the things that had to be proved were issues concerning whether the time spent was the activity engaged in, in this case driving, was required by the employer, whether it was in a government vehicle, whether it was for the good of the employer. Well, those are all things that are prerequisites to the employee's recovery. It's only if those things are established that the driving can be considered work. In this case, the court below assumed and we didn't dispute those things, and the court decided as a matter of law that this driving did not rise to the level of compensable work. Was this more of a Rule 12B instead of 56? Essentially, yes. If it weren't for the fact that this issue arose as a kind of an appendage of settlement of substantive issues, if the suit was only to begin with about home-to-work driving, it would have been a Rule 12B motion. Or, well, probably would have been. I think that the Bobo case arose in that way. And, of course, the Bobo case was decided on summary judgment, and I guess there wasn't the same kind of legal precedent, clear legal precedent before Bobo as there is now, Bobo being that precedent. So failure to state a claim would have been an appropriate term in this case. What about the assertion that there's been a 20-year custom or practice in effect? Our contention is that, well, first of all, this is not a custom and practice in our view. First of all, it reflected agencies' compliance with guidelines given by originally the Civil Service Commission and then OPM in FPM Letter 551-10 based on what that agency understood the FLSA to require. The reasoning underlying that interpretation is simply inconsistent with the reasoning underlying Bobo. And OPM no longer gives those guidelines. You're saying Bobo changed the law, in effect. No, I would say that Bobo interpreted what the law was, but it was what the law was all the time. Changed the understanding of what the law was. Well, yes, I mean in the sense that when the FPM letter was issued, the people who issued it didn't know that this Court was going to decide Bobo as it did. But as between the interpretation in the FPM letter and the interpretation of this Court, I think there's no dispute that the interpretation of this Court is the one to be followed. OPM doesn't disagree with that, and I don't think anyone does. Does the difference in facts make a difference between this case and Bobo? Bobo dealt with dogs. In fact, they had to take the dogs home. That's a distinction without a difference. In both cases, this case and that case, the employees are required to drive government vehicles, and it serves a government interest for the employees to do that. The particular reason is not identical, but there would be no sense in saying, well, if the reason is because you're caring for the dogs, then we won't call it work, but if the reason is so you'll have the car available to respond to an emergency later on, we will call it work. I mean, if anything, I think the argument for treating driving as work is somewhat weaker in this case because the driving itself, in the case of the dog handlers, the employees were handling dogs, taking care of dogs, and they were doing so during their drive. Mr. Bray, one question that's not in the record, I think. Who pays for the gas? I'm not sure. I think the employees get reimbursed for the gas. In the government vehicle? In the case of a government vehicle. I believe that's the case. Aren't these all government vehicles that are being driven? I mean, in the case of- They're not personal vehicles. That's right. That's true in Bobo. That's true here. The government would have to pay for the gas because they can't use the vehicle outside of driving to and from home or for work purposes. That's right. It would make no sense for them to be buying gas for the government vehicle. That sounds right. Now, the- Why would this claim be de minimis even under the requirements of Bobo in the previous case, Lindau versus U.S.? Why, would it be de minimis or would it not? Why would it be de minimis? The principal reason is that, as Mr. Bernstein correctly noted, there was a settlement in this case that covered all of the overtime, all of the work that the plaintiffs performed, except time solely spent driving home to work in a government vehicle. So the whole point of reserving that was that while we agreed that work after hours was to be compensated under the settlement, the parties disagreed as to whether merely driving between home and work was to be compensated. So the only thing that this appeal covers is driving time per se. But in addition, the kinds of things that the appellants describe that they have to do during the driving are essentially the same as those described in Bobo. They have to remain in radio contact. They're subject to certain restrictions and so on. There's really no distinction. But they're all for the benefit of the government. In both cases. They're not for the benefit of the employee. That's right, but no more so here than in Bobo. Well, in Bobo, the rationale that was used was the fact that they were taking the dogs back and forth, right? Right. Here, there's no dog involved. They're just riding back and forth to their homes, but being on call at any time during that time period. So if they get a call when they go from point A to point B, B being their home, and they have to go to point C during that time period, are they compensated? Then they would be compensated. They would be available for call during that time period. Would they be compensated from the time they left point A? Well, they're available for call 24 hours a day. And whether they're compensated or not, I mean, again, there are rules. No, no. Answer my question. Would they be compensated from going from point A to point C at that point? The driving time, that would depend. In fact, the same FPM letter that we're talking about in giving examples of what kind of driving is compensable or not, says that if you do respond to an emergency in the middle of the night, the time it takes to drive to the place of the emergency may or may not be compensated, depending on whether it's closer than your home or further from your home than the regular place of business. No, but that was not my question. My question was driving from point A, from their office to their home, point B. They're called to go to point C during that drive. Would they be compensated for going to point C? I believe- Relating back to the time they left point A? I believe that it would depend on where the point is. Like, if they just got home, or almost home, and then they had to go to a point 10 minutes away, which is less than to their workplace, I believe they would not be compensated, whereas if it's under the regulations, whereas if it was a longer distance, further than back to the workplace, they would be compensated. Are they compensated for the time spent at the emergency call? At the emergency call, they'd be compensated. What I'm doing, I'm not hedging, I'm just trying to say that the question, the less simple question is whether they'd be compensated for the time driving from point A to point B. It might depend on where point A and point B are. But if they have to spend two hours at the emergency call, they are compensated for that. Yes. Mr. Brilliant, do you think there's any problem with the naming of the various plaintiffs? There is a problem, because you can't, and you look at the notice of appeal, and maybe it's a technical problem, but when you look at the notice of appeal, other than, I guess, Stephen Adams and one other plaintiff that I've named, you can't tell who's in and who's out. It wouldn't be a problem if plaintiffs had said that they're appealing on behalf of Stephen Adams and all other plaintiffs. They wouldn't have to name all the plaintiffs. The problem here is they're saying they're appealing on behalf of 6,000-some-odd plaintiffs out of 14,000, and you can't look at any given name on the list of 14,000 plaintiffs and tell whether they're appellants or whether they're not. I understood there was a list that's been submitted.  But the appealing plaintiffs were not identified in the notice of appeal, and that is the problem that we see with the notice of appeal. Is there a remedy, technical remedy, for this technical problem that you see? It's jurisdictional, and I think that if a timely notice of appeal is defective, then it's defective. Okay. So you would say whatever we decide should pertain to Mr. Adams and or one other person? I think that's the way it comes out based on the defect in the notice of appeal. The legal issue would be the same either way. I really don't have much to add. I just wanted to address a couple of points that Mr. Bernstein made. Well, one of them I actually addressed already. And I want to focus on this custom and practice issue because that really is the only hook that appellants even colorably have for distinguishing this case from Bobo. As I already indicated, I think the reasoning underlying the FPM letter 551 is inconsistent with the reasoning in this case. And the so-called custom and practice was nothing more than some agencies adhering to the guidance in that FPM letter. Even assuming you could call that a custom of practice within the meaning of the Portal to Portal Act, that doesn't constitute a distinction here. First of all, it's not a – the custom of practice exception isn't really applicable here anyway because what that's an exception to is a provision in the Portal to Portal Act that essentially says if you're engaged in preliminary or post-preliminary activities that customarily had been – or that in the past had been considered by the Department of Labor or by certain Supreme Court decisions as constituting work, you will be – that will be excluded from work. How would you concisely state the holding of Bobo? I would say the holding in Bobo is that home-to-work driving in a government vehicle as a requirement to the employer does not constitute work unless it's accompanied by more than de minimis activities beyond mere driving that would fall under the definition of work. And if transporting the dogs was not more than de minimis activity, then transporting yourself and being on call isn't either. That's right. Is that because of the potential of failing to be able to keep administrative records on something like that? Was that because of the failure of being able to maintain administrative records? Because there were three elements for the de minimis. The practical administrative difficulty of recording the additional time, the aggregate amount of compensable time, and the regularity of the additional work. That's the de minimis rule. Well, yeah, that would go to – those would be factors in determining whether, you know, the additional activities we're looking at are de minimis or more than de minimis. In this case, really, as I indicated, I think that because of the scope of the settlement and what was reserved for appeal, we're really not looking at additional activities. We're looking at the driving itself. But even if we were looking at additional activities, I don't see any activities that the appellants described that are different from the activities involved in Bobo. Well, what if Mr. Adams hypothetically had said to his agency, I don't want to drive the car home, I want to drive my own car, I want to be able to be free to pick up the laundry, pick up my children at school or otherwise, without being in violation of the regulations. And could he do that? No. We agree that we're talking about cases where using the vehicle for commuting is required. It's mandatory. The use of the vehicle, going home and back, I mean, that's not what's required. So why is that? What's the underlying rationale for that? So that, in the case of criminal investigators, it's so that if at any time of the day or night the agency needs to call this agent to respond to an emergency, the agent won't have to come back to the office, pick up a car, and then go. He'll be able to go straight there. Couldn't he drive his own car to the investigative site? In theory he could, but he uses the government vehicle on the job. He uses, he may, in some respects, the government vehicle is more suitable to the job. So this is for the sole and unique benefit of the government? The fact that the government vehicle is used rather than his own vehicle, I don't know if that's a sole and unique benefit. It's for the benefit of the government. It may benefit the employee, too. He doesn't have to use his own car. He may not have a car. It may benefit the employee in a lot of ways, but we don't dispute that the reason it's required is because the government gets enough of the benefit from it that the government chooses to require it, as in the case of Bogle. Thank you, Mr. Brilliant. Thank you. Mr. Bernstein has two and a half minutes left, but since Mr. Brilliant went over, we'll give you four minutes for rebuttal. Your Honor, I reserved five. Yes, but you used more than half that. In any event. I'm giving you more than you had remaining. I was not aware of that, Your Honor. But let me first begin, Your Honor, by saying that at page one of our reply brief, there was this terrible problem of naming all the plaintiffs, and the rule was changed as a result of the Supreme Court's decision in Torres in 1988, so you will see at footnote three an advisory committee note saying you could do exactly what we did. We responded directly to Mr. Brilliant's point about naming all of the plaintiffs, and it's quite clear in our papers. For Judge Gallarza, let me say, as to the de minimis point you were asking about, in Bobo, they were talking about the de minimis time that they took the dogs outside of the cars. In this case, for 20 years, the record is replete with forms that were filed by criminal investigators recording their driving time. So there was no question but that driving was compensable, was compensated, and was simply, if you look at the record, it was simply a matter that was recorded and paid. So it's not a de minimis time. Mr. Brilliant's response to the 20 years point is that Bobo overrode that interpretation. The issue, Your Honor, of 254B of the Portal Act was not in Bobo. The issue of 254B relates to the fact that under the Portal to Portal Act enacted in 1947, Congress reserved the right of employees to be paid for work, which constituted work prior to the enactment of the Portal to Portal Act, and as to which there was a custom and practice. If you look at our briefs, the point of the Portal to Portal Act was to take away compensation for work where the employer did not anticipate he would have to pay. That was the whole point of the Portal to Portal Act. And since the employer knew that there was a custom and practice to pay, Congress carved out an exception and said that continued to be compensable. And indeed, the flat language of 254B says, the employer shall not be relieved of liability under the Portal Act if such activity is compensable by a custom or practice in effect at the time of such activity at the place where such employee is employed covering such activity in effect at the time of such activity. That means that if it was compensable, you're entitled to be paid if there was a custom and practice. Here there was a custom and practice. This point was not in BOBO at all because there was no custom and practice to pay those employees in BOBO ever. And so here we have a perfect illustration of the application of 254B. And indeed, that's what the Labor Department regulations say. And that 29 CFR 790.2. Now in addition to that, Mr. Brilliant-Pate just said that the exemptions are not, the burden to prove the exemptions are not the employers. But however, if you look at Corning Glassworks versus Brennan at 417 U.S. 188 and 196 and cases cited in our brief at page 36 to 38, the general rule is that the application of exemption under FLSA is a matter of affirmative defense, which the employer has the burden of proof. And that was the law of 1974 and it's the law today. It's the employer's burden, but it wasn't proved here. So that goes to the issue of exemptions and the burden of proof. There is another important point raised. That would be my last point, Your Honor. Raised by Mr. Brilliant. I'm afraid, Mr. Bernstein, this argument has come portal to portal, and I think we understand the case. I just have one question. Do you think all of the appellants will be bound by this decision? When you say all of the- No question about it, Your Honor. Thank you. Thank you, Mr. Bernstein. The case will be taken under advisement.